[Civil No. 2821. Filed January 20, 1930.]

[283 Pac. 922.]

RICHARD M. RICE, Appellant, v. IOLA CLARA RICE, Appellee.

Mr. Alexander Murry and Mr. Jared D. Taylor, for Appellant.

Mr. J. T. Kingsbury, for Appellee.

ROSS, J.—This is an appeal from an order denying a motion to amend a decree awarding the custody of Joe Edward Rice, an infant.

On August 18th, 1925, the mother, Iola Clara Rice, to whom we shall refer as appellee, sued the father, Richard M. Rice, to whom we shall refer as appellant, for a divorce and the custody of their minor child, Joe Edward Rice, then two years old, alleging extreme cruelty as grounds for divorce. Appellant in a cross-complaint charged appellee with desertion and asked for a divorce and the custody of the child. The case was tried in October, 1927, and resulted in a decree granting a divorce to appellant and the apportioning of the child's custody to the parents as follows: To the appellee, the child then nearing school age, during the school year, or from September 1st to June 1st, and to the appellant from June 1st to September 1st of each year; and in the decree it was provided that the appellant should contribute for maintenance of the child $20 per month during the nine months he was in appellee's custody. The court found that both the parents were fit persons to care for the child.

The grounds of the motion, filed September 1st, 1928, were (1) that appellee had no legal or permanent place of abode, and was not so situated as to be able properly to care for the child; (2) that appellant's situation enabled him to provide a better home for the child, and that the child's best interests demanded that he have his custody, care and control; and (3) that, although appellee had started divorce proceedings, appellant was awarded the divorce,· and, being a proper person to care for and rear the child, should have his custody.

After hearing the evidence in behalf of and against the motion, the court denied it. The evidence on the grounds (1) and (2) is to the effect that neither appellant nor appellee has a home or keeps house; that both work out for a living, the appellant as a cowboy most of the time, but sometimes as a miner, and the appellee as a drug clerk and waitress. When it comes to appellant's time under the decree to have the child's custody, he has left him with his parents, who look after and care for him, appellant spending more or less time with his child. When the time comes for appellee to have the child under the decree, she has left him with her parents, who look after and care for him. So, on the score of a suitable place for the child to live, the scales are pretty evenly balanced. Neither party has been so situated as to give the child much personal attention, and, as long as their status remains that of employees, it seems probable the immediate care and control of the child will be left largely to others.

The court heard the evidence on the question as to which of the parents could or had most suitably provided a home for the child, and refused to disturb the decree as originally entered, and we cannot say he erred therein.

Appellant contends that the practical result of the disposition of the child's custody under the facts is an award of it to the maternal grandparents. This is asserted, not only because the appellee has in the past left the child with his maternal grandparents, but in her testimony admitted an intention to continue to do so until she was able personally to supervise his care. Appellant says:

"As the mother (appellee) is not in event of any decision to have the direct and personal charge of the minor, her rights cannot be taken into consideration in this case. She has no legal right to nominate or appoint a custodian in her place."

He cites a number of cases in support of this contention, but every one of them was a contest for the custody of the child between a parent and grandparent. Such was the contest in *Harper* v. *Tipple,* 21 Ariz. 41; 184 Pac. 1005, 1007, in which we said:

"Under the law, the mother was not vested with the testamentary disposition of the child during the lifetime of the father. Neither could she give the child away without his consent," language quoted by appellant as sustaining his views. But appellee has not given the child to its maternal grandparents or in any manner attempted permanently to dispose of its custody. She, according to the evidence, is paying her mother out of her own earnings $10 a week to care for the child, thereby securing a service in the same way the appellant would if given the legal custody of the child. The possession of the child by the grandparents is her possession. At the date of hearing motion to amend decree appellant had contributed to the support and maintenance of the child while in appellee's custody only two monthly payments of $20 each—a very poor response to the court's decree.

The child, of course, is entitled to the care, affection and supervision of both the parents. This is in accord with natural law. When a situation arises that deprives him of this natural right, because his parents can no longer live together and maintain a common home, the laws of the state have proclaimed that the child's welfare shall guide the court in awarding his custody. Paragraph 1122, Civ. Code 1913. Unless it clearly appear that the trial court in making such award has abused its discretion, its decree will not be set aside or revised.

In *Bradstreet* v. *Bradstreet,* 34 Ariz. 340, 271 Pac. 717, 719, we said:

"The trial court in this case heard the witnesses, saw them face to face, examined the children, and determined that their welfare would be best served by allowing the original decree to stand. Under the decisions of this court, findings of this nature will not be disturbed by us, unless it clearly appears that they are not supported by the evidence, and that the court has abused its discretion. Nor will this court disturb findings or a judgment based thereon, when the evidence of the case is in sharp conflict."

The judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.