[Cite as *Huynh v. Le*, 2013-Ohio-2859.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

LONG NGOC HUYNH,                          :

    Plaintiff-Appellant,                  :          CASE NO.   CA2012-09-190

                                          :          O P I N I O N
  - vs -                                             7/1/2013

                                          :

LOAN KIM LE,                              :

    Defendant-Appellee.                   :


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR11-03-0282


Phillips Law Firm, Inc., Alfred Wm. Schneble III, 9521 Montgomery Road, Cincinnati, Ohio
45242, for plaintiff-appellant

Meredith Schnug, Legal Aid Society of Southwest Ohio, LLC, 10 Journal Square, 3rd Floor,
Hamilton, Ohio 45011 and Margaret L. Fibbe, Legal Aid Society of Southwest Ohio, LLC, 215
E. Ninth Street, Suite 500, Cincinnati, Ohio 45202, for defendant-appellee


**PIPER, J.**

{¶ 1}   Plaintiff-appellant, Long Ngoc Huynh (Husband), appeals a decision of the

Butler County Court of Common Pleas, Domestic Relations Division, ordering him to pay

defendant-appellee, Loan Kim Le (Wife), spousal support.

{¶ 2}   The parties were married on December 16, 2009, after Wife agreed to come to

the United States from Vietnam for the sole purpose of marrying Husband. The two had met only once in Vietnam before their marriage. The parties later separated on November 1, 2010, at which time, Wife was eight months pregnant with the couple's child. Husband filed for divorce on March 10, 2011.

{¶ 3} The couple stipulated some issues in the divorce proceedings, including that Wife would be the legal custodian of the child, but submitted several other issues for judicial decision, including child and spousal support and visitation issues. The matters proceeded to a hearing, during which Wife, who does not speak English proficiently, was aided with the help of an interpreter. Both parties testified and submitted evidence.

{¶ 4} The court also took into consideration a sworn affidavit that Husband signed when he brought Wife to the United States. In that document, Husband contracted with the United States Citizen and Immigration Service (USCIS) agreeing to support Wife in an amount equal to, at minimum, 125 percent of the poverty level until she became a United States citizen. The purpose of the contract was to "insure that the sponsor, not the government, would be responsible for the immigrant's support."

{¶ 5} The trial court ordered Husband to pay Wife $1607.60 per month in spousal support for five years, and ordered Husband to pay $506.68 a month in child support. Husband now appeals the trial court's decision ordering spousal support as it did, raising the following assignments of error. For ease of discussion, and because Husband's arguments are interrelated, we will discuss both assignments of error together.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED BY AWARDIND [sic] EXCESSIVE SPOUSAL SUPPORT TO BE PAID FROM THE APPELLANT TO THE APPELLEE.

{¶ 8} Assignment of Error No. 2:

{¶ 9} THE TRIAL COURT ERRED BY NOT IMPUTING INCOME TO THE

DEFENDANT-APPELLEE.

**{¶ 10}** Husband argues in his assignments of error that the trial court's order of spousal support is excessive.

**{¶ 11}** A trial court has broad discretion to determine the proper amount and duration of spousal support based on the facts and circumstances of each case, and a trial court's award of spousal support will not be disturbed absent an abuse of discretion. *Kedanis v. Kedanis*, 12th Dist. No. CA2012-01-015, 2012-Ohio-3533, ¶ 10. An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily, or unconscionably. *Miller v. Miller*, 12th Dist. No. CA2001-06-138, 2002-Ohio-3870, ¶ 8. A trial court has a statutory duty to base a spousal support order on a careful and full balancing of the factors in R.C. 3105.18(C)(1). *Kedanis*, 2012-Ohio-3533.

**{¶ 12}** According to R.C. 3105.18(C)(1),

> [i]n determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
>
> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
>
> (b) The relative earning abilities of the parties;
>
> (c) The ages and the physical, mental, and emotional conditions of the parties;
>
> (d) The retirement benefits of the parties;
>
> (e) The duration of the marriage;
>
> (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

- 3 -

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 13} The trial court's decision lists each factor for which evidence was introduced, and addresses the facts and evidence as it relates to those factors. After reviewing the record, we do not find that the trial court erred in balancing the factors or in ordering Husband to pay Wife spousal support as it did.

{¶ 14} Regarding the income of the parties, the trial court considered that the parties had a large disparity of income. The record demonstrates that Husband earns a base salary of $55,578 and approximately $12,549 in overtime per year, while Wife received only $161 in food stamps and $148 per month in rent assistance. The trial court also considered the relative earning abilities of the parties and determined that Husband is earning to his ability and Wife is not currently employed, and would not be employable in the near future for several reasons. Husband argues that the trial court failed to impute income to wife when

- 4 -

considering the first two factors.

{¶ 15} "When considering the relative earning abilities of the parties in connection with an award of spousal support, Ohio courts do not restrict their inquiry to the amount of money actually earned, but may also hold a person accountable for the amount of money a person could have earned if he made the effort.'" *Brown v. Brown*, 12th Dist. No. CA2008-08-021, 2009-Ohio-2204, ¶ 59, quoting *Rotte v. Rotte*, 12th Dist. No. CA2004-10-249, 2005-Ohio-6269, ¶ 13. "Therefore, a court may impute income to a party who is voluntarily unemployed, voluntarily underemployed, or otherwise not working up to his or her full earning potential." *Moore v. Moore*, 12th Dist. No. CA2006-09-066, 2007-Ohio-4355, ¶ 66. Whether a party is voluntarily unemployed or under-employed is "a factual determination to be made by the trial court based on the circumstances of each particular case," and that decision should not to be disturbed absent an abuse of discretion. *Rotte* at ¶ 14, citing *Rock v. Cabral*, 67 Ohio St.3d 108 (1993).

{¶ 16} Despite Husband's argument to the contrary, the trial court took into consideration that Wife does not work, and considered whether she had the ability to seek work. The court determined that Wife did not have the proper documentation to seek work in the United States, did not have and could not afford daycare for the couple's child, and was "hampered" by her inability to speak English proficiently. The trial court also considered evidence that Wife had a certificate to be a nail technician, but suffered from pain in her hands that made her unable to hold the necessary equipment. At the time of the hearing, Wife was seeking assistance in renewing her "green card" and was also seeking assistance to obtain the necessary paperwork to gain employment. However, there was no evidence on record that Wife was employable. Therefore, and based upon the circumstances of this particular case, the trial court did not abuse its discretion in declining to impute income.

{¶ 17} The record indicates that at the time of the hearing, Husband was 48 years old

- 5 -

and Wife was 30 years old. While Husband is healthy, the record indicates that Wife suffers from both physical and mental/emotional issues. Although Husband was under the impression that Wife was healthy when he brought her to the United States, he soon discovered that Wife suffers from mental health issues, including suicidal tendencies that required multiple hospital stays. Wife also testified that she has pain in her hands which precludes her from pursuing a career as a nail technician.

{¶ 18} While Wife has no retirement benefits, the court considered that Husband has a 401k retirement plan through his employment. The trial court divided equally the small portion of Husband's retirement plan that was procured during the brief marriage.

{¶ 19} The court considered that the duration of the marriage was brief, as the parties were married for less than a year before they separated, and were in the midst of divorce proceedings within two years.

{¶ 20} The trial court also considered that it would be difficult for Wife to work outside the home because of her custodianship of the parties' child, coupled with the other issues regarding the language barrier and not having the proper paperwork to seek employment.

{¶ 21} Regarding the standard of living the parties established during the marriage, the record indicates that the parties did not have an extravagant or lush lifestyle in the least. Instead, they lived on Husband's salary alone, and did not own any assets of substance. The trial court specifically found that the parties had an unhappy marriage and lived in Husband's home until it was foreclosed upon. Husband was unhappy that Wife had not been able to obtain employment and that she did not "help" with family expenses. Husband also had the utilities turned off in the marital residence after he moved out of the home, although Wife and their child continued to reside there.

{¶ 22} The trial court also considered the relative extent of the parties' education. Husband, who is employed in the electrical maintenance field, did not submit evidence of his

educational background. Wife testified that before she came to the United States, she studied "petroleum geology" and worked in the "import/export" business in Vietnam. Wife also received a certificate as a nail technician after her arrival in the United States, but is unable to work in that field due to pain in her hands.

{¶ 23} According to the record, the parties had few assets or liabilities because Husband had recently claimed Chapter Seven bankruptcy. However, the trial court considered Husband's contract with the USCIS in which he agreed to support Wife in an amount equal to 125 percent of the poverty level. According to the evidence deduced at trial, the poverty level for a household of two is $18,913 per year. Wife has several medical bills in her own name, as Husband removed Wife from his medical insurance after the divorce proceedings began.

{¶ 24} Regarding whether the parties contributed to the education, training, or earning ability of the other, the trial court considered that the parties borrowed $2400 from Husband's family in order for Wife to obtain her state license as a nail technician.

{¶ 25} The court also considered the time and expense necessary for Wife to acquire education, training, or job experience so that she will be qualified to obtain appropriate employment. The court noted that Wife will need to learn to speak English, but that Wife did not present any evidence of the cost of training. The evidence presented demonstrated that Wife was learning to speak English and was receiving some assistance in seeking her "green card" and employment documentation from her church.

{¶ 26} The trial court considered the tax consequences for each party of an award of spousal support, and determined that the amount of spousal support paid to Wife would be taxable as income and deductible to Husband.

{¶ 27} Regarding "any other factor that the court expressly finds to be relevant and equitable," the court again noted the affidavit and contract Husband singed by which he

- 7 -

agreed to support Wife at a minimum of 125 percent of the poverty level. The court also considered that Wife received "maltreatment" from Husband during the marriage, and that she has been "almost exclusively responsible" for the care of the parties' child. The court also noted that Wife has no family support in Ohio, and that she continues to face issues regarding her immigration status, her inability to speak English, as well as her inability to be employed until she obtains proper documentation.

{¶ 28} After balancing all of the factors, the trial court determined that it was reasonable and appropriate that Husband pay Wife $1,607.60 per month in support. While Husband argues that the spousal support is excessive because it will leave him little money each month to cover his own expenses, the record supports the trial court's findings regarding each statutory factor and we find no abuse of discretion in the way the trial court balanced those factors. The five-year time frame during which Wife will receive spousal support will permit her to procure the necessary paperwork to obtain employment, and will allow her time to pursue citizenship if she so desires. However, the time frame is not so long that it is disproportionate to the length of the couple's marriage.

{¶ 29} Regarding the trial court's discussion of the affidavit contracting with the USCIS by which Husband agreed to support Wife, the trial court considered Husband's own agreement to support Wife as it related to several of the statutory factors. However, there is no indication in the record that the trial court placed an undue amount of consideration on the affidavit or that the trial court disregarded any other factor because of the affidavit. Instead, the trial court's decision is well-reasoned and thorough, and does not represent an abuse of discretion. As such, Husband's assignments of error are overruled.

{¶ 30} Judgment affirmed.

RINGLAND, P.J., and S. POWELL, J., concur.