[Cite as *Cusack v. Cusack*, 2024-Ohio-5427.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| KEVIN CUSACK | | C.A. No.     23CA012064 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEBRA CUSACK | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellee | | CASE No.     16 LS 081963 |

DECISION AND JOURNAL ENTRY

Dated: November 18, 2024

STEVENSON, Presiding Judge.

{¶1}    Plaintiff-Appellant Kevin Cusack ("Husband") appeals the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, that granted him a divorce from Defendant-Appellee, Debra Cusack ("Wife"). This Court affirms.

I.

{¶2}    Husband and Wife were married on August 9, 1986.  Husband filed a complaint for legal separation in October 2016.  Wife counterclaimed for divorce and the matter proceeded to trial in April 2018.  The court issued a judgment entry of divorce in October 2018.

{¶3}    As relevant to this matter, the trial court's uncontested findings of fact are as follows.  Husband was the primary financial supporter during the marriage.  Wife was a stay-at-home mom and did not work outside the home. The parties lived a financially worry-free life and were generous with their spending.  At the time of trial, Husband was employed at Charles Schwab and earned approximately $275,000 per year plus bonuses and grants throughout the year.

Historically, Husband consistently made approximately $500,000 per year including bonuses. His target bonus for 2018 was $125,000. Wife has multiple sclerosis and is not capable of earning income. Her uninsured medical expenses are in excess of $20,000 annually. During the pendency of the case, Husband paid for Wife's medical expenses and the cost of her care. He also provided her with additional spending money.

{¶4} The trial court ordered Husband to pay Wife lifetime spousal support in the amount of $9,000 per month from his regular pay. Based on the law that was in effect at that time, the court ordered that Husband was permitted to deduct the spousal support payment from his gross income for federal income tax purposes, and Wife was required to report the spousal support payment as income. In addition, the court ordered that: "at such time as Husband receives bonuses and/or equity grants and such are available and able to be disbursed, [he] shall distribute one half to [Wife]. The amount to be split 50-50 is the amount after taxes and after all mandatory or necessary deductions, such as retirement."

{¶5} Wife appealed. We dismissed her appeal for lack of jurisdiction because all the assets of the parties had not been divided. Nearly three years later, on June 15, 2021, the trial court issued a judgment entry ordering that the parties' agreed journal entries, one dated September 27, 2019, and the other dated June 26, 2019, be made addendums to the October 2018 judgment entry of divorce. Husband attempted to appeal the June 15, 2021, judgment entry in Case No. 21CA011774. However, on June 30, 2022, this Court dismissed Husband's appeal for lack of jurisdiction due to the lack of a final appealable order. We determined that although the trial court made a finding in the October 2018 judgment entry of divorce that Husband owned 1538 shares of Schwab stock valued at $78,669, it did not divide those shares.

{¶6}    On November 15, 2023, the court adopted the parties' agreed judgment entry dividing the 1538 shares of Schwab stock in accordance with a vesting schedule that was in effect at the time the shares were awarded to Husband in 2017.  According to the agreed entry, Husband lost his employment with Schwab in 2020, which cancelled the vesting of his shares thereafter.  Thus, the parties were each granted only a fraction of the shares, with Wife's total shares reduced by the number of shares Husband had previously transferred to her in October 2018.

{¶7}    Husband now timely appeals the judgment entry of divorce and asserts two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN ORDERING AN EQUAL DIVISION OF RESTRICTED STOCK UNITS (REFERRED TO BY THE TRIAL COURT AS STOCK OPTIONS) ACQUIRED AFTER THE COURT ISSUED THE JUDGMENT OF DIVORCE.**

{¶8}    Husband argues that the trial court erred in awarding Wife spousal support in the form of future equity grants/stock options that he might earn as a bonus because the yet-awarded funds constitute his after-acquired separate property that is not subject to division after the termination of the marriage.  Husband further argues that by issuing an order that divides property acquired after the divorce, the trial court is effectively modifying the property division each time Husband is awarded an equity grant/stock option by his employer, which it is not permitted to do sua sponte.  In addition, Husband argues that by supplementing its spousal support award to Wife with a portion of Husband's separate property, it effectively compensated Wife with a distributive award under R.C. 3105.171(E)(1), and because the trial court made no such finding that a distributive award was appropriate pursuant to R.C. 3105.171(E)(2), the bonus award was in error.  We disagree with Husband.

{¶9} It is well-settled that the trial court is vested with broad discretion over matters of spousal support. *Poitinger v. Poitinger*, 2005-Ohio-2680, ¶ 7 (9th Dist.). "This Court reviews a trial court's award of spousal support under an abuse of discretion standard." *Krone v. Krone*, 2011-Ohio-3196, ¶ 8 (9th Dist.). An abuse of discretion is something more than an error of law or in the exercise of judgment; "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying this standard, a reviewing court is precluded from simply substituting its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶10} Since *Blakemore*, the Ohio Supreme Court has provided additional guidance about the nature of an abuse of discretion:

> Stated differently, an abuse of discretion involves more than a difference in opinion: the term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. For a court of appeals to reach an abuse-of-discretion determination, the trial court's judgment must be so profoundly and wholly violative of fact and reason that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

(Internal citations and quotations omitted.) *State v. Weaver*, 2022-Ohio-4371, ¶ 24.

{¶11} Husband is essentially challenging the tiered spousal support model that treats the payor spouse's regular salary and future stock bonuses as income for purposes of spousal support. As explained below, this Court as well as other appellate courts have affirmed this method of awarding spousal support.

{¶12} In *Gaffney v. Gaffney*, 2020-Ohio-5051 (12th Dist.), the trial court treated husband's stocks and stock options that had been exercised prior to the end of the marriage as marital property and divided the shares equally. *Id.* at ¶ 16. In calculating spousal support, the trial court adopted a tiered support model where "Tier 1" support was related to husband's base

salary, and "Tier 2" support was a percentage of his future gross bonuses, commission, or incentives he would earn from his employer during the spousal support term. *Id*. On appeal, husband argued that the trial court abused its discretion and that the spousal support award constituted double dipping; that is, a "double counting of a marital asset, once in the property division and again in the spousal support award." *Id*. at ¶ 14, citing *Corwin v. Corwin*, 2013-Ohio-3996, ¶ 50 (12th Dist.). The *Gaffney* Court disagreed with husband because the trial court specified that his Tier 2 support was only for "'any *future* gross bonus . . . from his employer *and during the spousal support term.*'" (Emphasis in original.) *Gaffney* at ¶ 6. The *Gaffney* court ultimately concluded that "[h]usband's future bonuses are an appropriate consideration in the calculation of support obligations." *Id*. at ¶ 16.

{¶13} The Tenth Appellate District also recently addressed this issue in *Mayer v. Mayer*, 2022-Ohio-533 (10th Dist.) wherein it relied on *Gaffney* as well as a host of other appellate cases that addressed the use of stock bonuses in tiered spousal support awards. *See id. generally* at ¶ 29-39. In *Mayer*, wife had annual income that included a base salary, cash bonus, and a variety of stock bonuses. *Id.* at ¶ 8. Wife's stock-based compensation was paid under her employer's long-term incentive plan ("LTIP"). *Id* at ¶ 9. The trial court ordered wife to pay monthly spousal support to husband but excluded wife's yearly cash bonus and LTIP bonus from her gross income for purposes of calculating spousal support. *Id*. at ¶ 12. Husband appealed, assigning as error that the trial court did not include wife's LTIP bonus in her gross income for purposes of spousal support. The *Mayer* Court agreed with Husband, stating as follows:

> R.C. 3105.18, which governs the award of spousal support in divorce proceedings, provides in relevant part as follows:
>
> . . .

An award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from *future income* or otherwise, as the court considers equitable. (Emphasis in original.)

. . .

. . . we find that the trial court abused its discretion by failing to consider appellee's post-marital LTIP bonuses as income to appellee for purposes of calculating appellee's spousal support obligation.

. . .

We agree . . . that [wife's] *compensation in the form of LTIP shares is simply bonus compensation that must be included in her gross income for purposes of calculating spousal support*. (Emphasis added.)

*Id*. at ¶¶ 18, 28, 37.

{¶14} In arriving at its conclusion, the *Mayer* court noted the similarity to *Gaffney* in that "no double-dipping occurred because the trial court did not treat the same bonus . . . as both marital property and income." *Id.* at ¶ 34. *See also Daniels v. Daniels*, 2008 WL 9731054, *8 (10th Dist. Mar. 4, 2008) (the Tenth District rejected Husband's argument that spousal support award of 30% of bonuses in addition to payment of $7000 per month was unreasonable because the trial court set forth sufficient facts and compelling reasons in support and retained jurisdiction to modify or terminate spousal support).

{¶15} This Court has also addressed the principle of tiered spousal support involving stock bonuses. In *Organ v. Organ*, 2014-Ohio-3474 (9th Dist.), three years after the parties' separation but prior to the divorce, husband went to work as the chief executive officer for a company in California. *Id*. at ¶ 4. The trial court found that the stock husband acquired in that company was his separate property, but that any income generated from it could be considered income for spousal support purposes. *Id*. at ¶ 5. Husband was ordered to pay wife a lifetime monthly amount for spousal support plus 50% of any employment bonuses he received as well as 33% of any income or gain he realized on the stock he acquired in the California company. *Id*.

On appeal, husband argued that the trial court abused its discretion by granting wife 33% of the income from the California company stock. He maintained that under R.C. 3105.18, the trial court was not authorized to distribute his share of the marital estate to wife under the guise of spousal support. *Id*. at ¶ 20. We disagreed with husband and concluded that the trial court was permitted to consider his income from the California company investment when it determined the amount and terms of spousal support, reasoning that "just because [h]usband acquired the stock with his share of the marital assets does not mean the court could not consider it when it determined [h]usband's spousal support obligation." *Id*. at ¶ 22. In arriving at that conclusion, we relied on R.C. 3105.18(C)(1)(a), which provides that in determining spousal support, "the court shall consider . . . [t]he income of the parties, from *all* sources, including . . . income derived from property *divided, disbursed, or distributed* under [R.C. 3105.171]." (Emphasis added.) *Id*.

{¶16} In *Wilson v. Wilson*, 2023-Ohio-3521 (9th Dist.), husband earned an annual base salary as well as a bonus in the form of shares of the company's stock. *Id*. at ¶ 2. The trial court found that his shares in the company's stock were a marital asset subject to division. *Id*. The trial court also ordered husband to pay wife monthly spousal support based on his gross income that included both his base salary and the value of the company stock he receives. Husband argued on appeal that the trial court improperly treated the company stock he received both as income and marital property. We disagreed with husband, reasoning as follows:

> The trial court did not err when it treated [h]usband's stock payments as income. . . . This case also does not involve double dipping. . . . Husband does not allege, let alone identify anything in the record that establishes, that his shares of company stock [that were divided] are or were considered to be income-producing. *The treatment of the company stock is no different than if [h]usband was paid bonuses in cash and he used them to buy stock or placed the funds in a savings account. He received something of value from his employer during the marriage and retained it as an asset.* The bonuses, therefore, both qualified as income in the years [h]usband received them and, because he retained them, became a marital asset subject to equitable division. We note that the decree only divides the stock earned during

the marriage and does not require [h]usband to transfer any future stock bonuses to [w]ife.

(Internal citations omitted.)(Emphasis added.) *Id*. at ¶ 10.

**{¶17}** In the instant case, the first tier of spousal support, the $9,000 monthly payment, was based on Husband's regular salary. The second tier of support was based on future bonuses and/or stock units that Husband might earn. Husband's stock holdings, including the Schwab shares, were valued and divided as of the date of the divorce. Unlike the aforementioned cases, Husband's argument does not sound in "double-dipping." Instead, his challenge is confined to whether future bonuses in the form of stock equity can be considered income for spousal support purposes. As explained above, it is clear from the plain language of R.C. 3105.18(B) and (C)(1)(a) and the case law addressing the subject that regardless of the form of the bonus, whether stock or cash, future income is a permissible source of spousal support. As we noted in *Wilson*, the fact that Husband might receive a bonus in the form of stock versus cash does not change its character as income from his employer. *Id.* at ¶ 10. If Husband were to instead receive cash instead of stock equity, he would be free to use it to purchase stock.

**{¶18}** Furthermore, like the husband in *Wilson,* Husband does not allege that the shares that were divided as marital assets are or were income-producing or that he is required to transfer any future bonuses to Wife as part of the division of marital property. The plain language of the decree is that only the stock units held by Husband as of the date of the divorce were to be divided as marital property.

**{¶19}** The facts of this case are similar to *Gaffney, Mayer, Daniels*, *Organ,* and *Wilson*, discussed *supra*, wherein this and other appellate courts upheld a tiered spousal support model that included both monthly payments from the payor spouse's regular salary as well as future stock bonuses. Therefore, following precedent, we agree with the trial court that Husband's potential

future compensation in the form of stock equity grants is simply a bonus that can be included in his gross income for purposes of calculating spousal support. Any future stock bonus paid to Wife as spousal support would not be considered "double-dipping" because it would only be derived from *future* income and not from both marital property and income. *See Mayer,* 2022-Ohio-533, at ¶ 34. Notably, Husband has not cited any case law or other relevant legal authorities holding that future stock bonuses are *not* permitted as a component of spousal support or that they constitute his separate property. *See* App.R. 16(A)(7); *State v. Franks*, 2017-Ohio-7045, ¶ 16 (9th Dist.) (Appellant's argument must contain citations to the authorities upon which appellant relies; otherwise, it may not be considered).

{¶20} Accordingly, based on the record before us and the relevant case law, we conclude that the trial court did not abuse its discretion in awarding Wife spousal support based on a percentage of Husband's future stock bonuses in addition to monthly payments from his regular salary. Husband's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ORDERING HUSBAND TO PAY $108,000 ANNUALLY PLUS 50% OF HIS BONUSES AND EQUITY GRANTS TO WIFE AS AND FOR SPOUSAL SUPPORT[.]**

{¶21} Here, Husband argues that in awarding Wife 50 percent of the bonuses and equity grants that he may or may not receive, the trial court did not indicate whether it considered any of the R.C. 3105.18(C) factors to justify the additional award. He further argues that the trial court's spousal support order is unreasonable and inappropriate because the award to Wife is based on a percentage formula rather than on the R.C. 3105.18(C) factors. We disagree.

{¶22} We again incorporate by reference the abuse of discretion standard outlined above. In determining whether spousal support is appropriate and reasonable, and in determining the

nature, amount, duration, and terms of payment, R.C. 3105.18(C)(1) sets forth 14 factors that the trial court shall consider in making an award of spousal support. In determining spousal support, the trial court must weigh all of the factors listed in R.C. 3105.18(C) and not base its determination on any single factor. *Hamrick v. Hamrick*, 2024-Ohio-2517, ¶ 47 (9th Dist.). "[T]he trial court need not comment on each factor, but the record must demonstrate that the court considered each factor in making its spousal support award." *Barlow v. Barlow*, 2009-Ohio-3788, ¶ 22 (9th Dist.). "The trial court must look at the totality of the circumstances in a particular case to determine if spousal support is appropriate, and if so, the appropriate amount and duration of such support." *Schaaf v. Schaaf*, 1997 WL 802951, *5 (9th Dist. Dec. 24, 1997).

{¶23} Here, the judgment entry of divorce contained a specific section captioned "Spousal Support." The trial court began its spousal support analysis with a thorough explanation of the R.C. 3105.18(C) factors and their application to the parties. The court listed each of the 14 enumerated R.C. 3105.18(C)(1) factors and expressly made detailed findings on each one as they related to the parties. Therefore, the trial court engaged in the required analysis and "demonstrate[d] that [it] considered each factor in making its spousal support award." *Barlow* at ¶ 22.

{¶24} After listing and explaining the individual spousal support factors, the trial court ordered the monthly support award of $9,000 to Wife followed directly by the order regarding the tax consequences and Wife's request for retroactive temporary support. In the next paragraph, the trial court ordered the bonus award and concluded with the court's retention of jurisdiction over the issue of spousal support. Thus, the inclusion of the bonus award contemporaneously with the provision regarding the $9,000 monthly payment in the section of the decree dedicated solely to spousal support clearly evinces the trial court's intention that the bonus award was part of the

overall spousal support award. The trial court's use of the term "[a]dditionally" to introduce the bonus award reflects the court 's intent that the bonus was to be part and parcel of a two-pronged spousal support award.

{¶25} Therefore, based on the juxtaposition of the court's discussion of the R.C.3105.18(C) factors and the monthly payment and bonus award in the section of the decree devoted solely to the issue of spousal support, the trial court clearly intended that the statutory factors applied to the entire spousal support award, including the bonus.

{¶26} Regarding Husband's challenge to the percentage formula, in *Organ*, 2014-Ohio-3474 (9th Dist.), we rejected the argument that it was improper for the trial court to base spousal support on a mathematical (percentage) formula because the case upon which husband relied, *Burner v. Burner,* 2000 WL 1533898 (9th Dist. Oct. 18, 2000), did not analyze the effect of the 1990 amendments to R.C. 3105.18(C)(1) that eliminated the need-based requirement. *Id*. at ¶ 13. Those amendments provided that an award of spousal support must only be "'appropriate and reasonable' after consideration of the factors listed in that section." *Id*. at ¶ 14, quoting *Haynes v. Haynes*, 1998 WL 114424, *3 (9th Dist. Mar. 4, 1998), quoting R.C. 3105.18(C)(1). We noted in particular that the reason for the Ohio Supreme Court's admonition against the use of a mathematical formula in calculating spousal support "was simply to emphasize that a trial court 'must consider all [of] the factors listed in R.C. 3105.18(B) and not base its determination upon any one of those factors taken in isolation.'" *Id*. at ¶ 15, quoting *Kaechele v. Kaechele*, 35 Ohio St. 3d 93 (1988), paragraph one of the syllabus.

{¶27} As explained above, the trial court in this case considered all of the R.C. 3108.18(C) factors in making its spousal support award and commented on each one. The trial court stated in its findings sufficient facts and compelling reasons in support of its award of spousal support under

the totality of the circumstances present in the case; that is, the parties' standard of living during the marriage, that Husband's employment was the sole source of the parties' income, and Wife's debilitating medical condition which not only prevents her from working but will involve ongoing and undetermined medical expenses. *See Schaaf*, 1997 WL 802951, at \*5. The trial court also found that "both parties contributed equally to the production of marital [i]ncome" which is consistent with its 50 percent allocation of the bonus award. Husband does not challenge any of these findings.

**{¶28}** Accordingly, based on the foregoing, we cannot say that the trial court abused its discretion and failed to consider the R.C. 3105.18(C) factors in making its additional bonus award as Husband alleges and that the 50 percent allocation showed "perversity of will, not the exercise of judgment." *Weaver*, 2022-Ohio-4371, at ¶ 24. Husband's second assignment of error is overruled.

### III.

**{¶29}** Husband's assignments of error are overruled and the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT


FLAGG LANZINGER, J.
CONCURS.

HENSAL, J.
CONCURRING.

**{¶30}** I agree that Husband's first assignment of error should be overruled. Husband believes that assets he acquires from his employer after the divorce are his separate property that may not be divided. They are not. Any compensation he receives from his employer is income, whether it is paid to him in cash, stock options, tangible goods, or otherwise. None of the definitions of separate property under Revised Code Section 3105.171(A)(6) pertains to assets acquired after the end of a marriage. Section 3105.18(B) specifically allows an award of spousal support to be "in real or personal property . . . from future income" such as the bonuses and equity grants Husband has and continues to receive following the end of the marriage.

**{¶31}** I also agree that Husband's second assignment of error should be overruled. Although Husband notes that the trial court did not identify what would be deemed a "mandatory

or necessary" deduction from the bonuses and equity grants, he does not argue that the language is so ambiguous as to be unenforceable. Regarding the amount of the spousal support award, the trial court worked through each of the factors listed under Section 3105.18(C) in its decree. Husband notes that the court awarded Wife 56% of the net pay he was receiving at the time of the divorce, but he overlooks that it was less than 40% of his gross pay and that the spousal support award is deductible, which will increase his monthly net income relative to Wife's. In addition, Wife will not benefit from any increases of Husband's base pay. I agree with the lead opinion that the court did not improperly exercise its discretion when it awarded Wife $9,000 per month plus half of Husband's future bonuses and equity grants as spousal support. I, therefore, concur in the judgment.

APPEARANCES:

SAM R. BRADLEY, Attorney at Law, for Appellant.

L. RAY JONES, Attorney at Law, for Appellee.